This is Wisconsin Central Limited v. United States, Mr. Riley. May it please the Court, my name is Richard Riley, appearing for the Plaintiff-Appellant Railroad Companies, seeking railroad retirement tax refunds for themselves and their employees. Shares of Canadian National Railway Company stock transferred to employees when they exercise their stock options are not money remuneration. That doesn't make any sense at all. Your Honor, they are outside... It doesn't make any sense because it's convertible to money immediately, right, like stock? The same thing. Your Honor... There's no meaningful difference between a share of stock and a piece of currency. Because of the opportunity for appreciation, Your Honor. That the term money remuneration was... So look, money appreciates in value. It depends on the market, depending on, you know, conditions of supply and demand and so on. Money may buy more today than it bought a week ago. Your Honor, with respect, I don't think the fact of inflation, which can affect the value of money at a high level, really answers the question here, and we believe... It just doesn't make any sense, this distinction you're arguing. What difference does it make whether you get cash or you get a stock option, you know, that can be converted to cash very easily, right? Same thing. Well, in our case, actually more than half of the shares were not converted to cash. The recipients... Well, you have a choice. I mean, their value comes in different forms. And you can hold on to the stock if you think it's going to appreciate over time and so on. But you always have the option of converting to cash. That's true, Your Honor, but at the time it's distributed, it is non-monetary property. That is so unrealistic because it's just like money. It has value. It can be converted to cash instantly. Is it correct, Mr. Riley, that in this instance, employees did have the option of exercising these options in a way so that the only visible sign of it is a transfer to their checking accounts? That's right. That's one of the exercises. So that looks an awful lot like money. Should the tax treatment depend upon the form in which the option is exercised? Well, Your Honor, and in response to Judge Posner as well, it really isn't just the form. The company itself treats equity-based compensation in the explanation of the option and the share distribution program to the employees. They say this ties your economic future to the company in a way that your salary cannot accomplish. So does the company's intent determine the taxation? Well, no. It's not so much the intent, Your Honor. It's that the company is observing the distinction that we're making to the court, which is that appreciating property that is simply not used in ordinary day-to-day commerce as a medium of exchange by people, that is the distinction. We don't have a lot of time. Yes, Your Honor. But let me just ask you to address what seem to me your biggest problems. Chevron, the phrase any form, and the statutory exclusions for qualified stock options and other non-cash benefits, which are difficult to understand if your position were correct about the narrow scope of money remuneration. Yes, Your Honor. Well, thank you. Yes, this is actually, you know, in Chevron terms, this is a Chevron Step 1 case. This is a statutory interpretation case. There is a distinct irreducible difference in the statutory definition of railroad retirement tax compensation, which is defined as money remuneration, versus the analogous tax base under Social Security tax, FICA, which is all remuneration. It is so distinct on the face of the statute that it is a statutory distinction that this court should implement and enforce, not refer it over to the Internal Revenue Service in this case. Well, for a lot of years, you paid that tax. We did, Your Honor. And you put a valuation on it each time, I presume. That's correct. When the shares were, the value placed on it is actually the trading price on the day the shares are distributed. And is that formally what you assessed as the value of the withholding tax, I guess? That's right. The tax was actually imposed on the appreciation of the difference between the strike price, the exercise price, and the value of the share on the day it was distributed, on the day the option was exercised. Well, if someone holds this and does not, well, okay, let's say they do eventually purchase the stock, exercise it, I guess. Is that the time it's taxed? That's right. It's taxed on exercise. But in the meantime, when it's distributed, it's not taxed. That's right. The options are not taxed. Okay. Tax only arises, and we say erroneously, but tax only arises at all when the shares are distributed, when the options are exercised. All right. Is that what the other side is arguing, or are they saying something else? No. There's actually, Your Honor, no dispute about sort of when the incidence of tax arises, if it arises at all. Our position is that railroad retirement tax doesn't arise on these shares because they're not within the scope of money remuneration. Because the money is an adjective. It's a limitation. It's a narrowing. Well, yes, correct. It's a limitation. And so when you talk about, what is it, remuneration? Money remuneration. Well, money remuneration versus all remuneration. You say all remuneration is everything. Yes. You say money remuneration is limited to money and not things like stock options. That's correct. That's our case, Your Honor. So why would stock options not be taxable but script for company stores would be? Which is more liquid? Well, the script is certainly more liquid. In one place, right? In one place. Here is the distinction, Your Honor. And I agree with you. This is absolutely where you have to get to the core of the case. And it goes to the any form of, as I think Judge Posner mentioned a minute ago. In this case, form just means piecework, salaries, wages, commissions, fees, bonuses, and any other remuneration in money, a way it can be paid. That's what any form of money remuneration means. And what I'm reading from is the 1937 regulation under the Carrier's Taxing Act, as it was then, but the original enactment of money remuneration. Under your theory, Mr. Riley, suppose the company decided to give treasury bonds as part of its salary. Right. Does that count or not? Treasury bonds would not be money remuneration. That's correct. Wow. An investment property such as shares, in our case, Canadian National Shares. Does it depend on the maturity date? Well, I don't think it would depend. 90-day T-bills. Well, and you're right. There is a, you know, in a sense there's a sliding scale between a Federal Reserve note, which you can go out and spend today, and a T-bill, which is the distinction you're drawing. Your Honor, with respect. I'm asking why we should draw that distinction. Well, the distinction is that that is the difference between money. It's just a tax judge. Just a tax judge. Your Honor, it is not a tax judge. Of course it is. Well, it hasn't been. You guys paid taxes on this for a long time, but it does look that way now. Here's the reason it isn't and would not be a tax judge, Your Honor, is that the employees wouldn't stand for compensation in stock options or shares or T-bills. People have to pay mortgages. And what Congress adopted into the Railroad Retirement Tax Act was the cash. I don't understand what you meant. They wouldn't stand for what? Well, an option, you don't know if you want. These options don't mature immediately. There's actually a four-year vesting period. So you couldn't, you know, the employees would insist on money remuneration as well as their stock options. Options, they fluctuate. That's part of our argument. Well, I don't know what you mean by as well as. They want to have the stock options and they want to have the cash. Right. Yeah, but the stock options are economically really indistinguishable from the cash. Well, they're... So why should they be treated differently for tax purposes? Well, they are distinguishable in that they're a different form of property and again... Well, so what? They're interchangeable. You can use your money to buy stock. You use stock and cash in, you know, sell it, get money. But, Your Honor... So interchangeable that I don't understand why they should receive different tax treatment. Well, Your Honor, that's not what Congress meant when they enacted the term money remuneration. We don't know what they meant. We have this language, you know, money remuneration in any form. Right. Any form. You could say, well, actually, this remuneration, this stock is really, it's just like money. It's just in a different form. Right? That's a possible interpretation. It happens to be the only one that makes any practical sense. Well, Your Honor, the... I would say the real practical distinction that would be the appropriate one and is completely administrable and also consistent with the limiting phrase money remuneration is to treat... Your Honor, I see my time is up. I don't want you to go away yet. Yes, sir. So please answer his question. That's okay. You can answer Judge Mannion. Well, I'm just going back to money remuneration. Is there a time when the stock options will be converted into money and then is taxable? Only at the employee's election. Well, if he decides what to give it back or say I don't want it, then he's never taxed. That's correct. For example, the options can expire and some of them do. Well, that would seem to be the stronger part of your argument is say that you've got to first of all realize the money or cash or whatever you want to call it. But if there's something that has to be exercised... Absolutely. Then you're saying there shouldn't be taxed, which I... Judge Hamilton mentioned when you issue or I guess a treasury bond, was it? Was it treasury? Sure. Like a fee bill. Yes. So now you're talking about an asset. Right. And you expect to get interest on that in the meantime. I know they don't pay very much right now. But at some point, it matures. Right. And then you get your money back, whatever you owe the government. But in the meantime, you get that back. So everything has to be looked at, at least in my view, when the value is realized, the money. And you may have an argument, at least from my point of view, that there is a time when it wouldn't be. But that's the problem you also have, as Judge Hamilton pointed out and I asked a little while ago, been paying for a long time. It's only now that you're into the court as opposed to the tax court to get a refund, which is the way you have to go. I understand that. Well, one response to that that we would like to point out to the court is that Canadian National actually wasn't privatized and went public until 1996. And these are 10-year options. And our first year of a refund claim is 2006. So while it wasn't instantaneous, it was, in our case, it was pretty close to the time when the stock options and ultimately the share distributions were even available to make a refund claim on. If you give me one second, I'll respond to your point about why our reading makes sense of all the words in the statute, the QSO exclusion, the Qualified Stock Option. That our reading says money remuneration doesn't include our non-qualified stock options because shares are not money. That is our argument, and I believe it's correct. In our case, all of the exclusions, and Qualified Stock Option is the main one, that was enacted 70 years later, 69 years later, with no indication whatsoever that it was intended to address the overall question of stock options. It addressed the specific tax-favored issue of Qualified Stock Options, and it was meant to correct an IRS administrative mistake that had arisen in the 90s and 2000s. The Qualified Stock Option exclusion simply has nothing to do. Where do we find what you just told us? The Qualified Stock Option, that is in... It's in E12. I'm talking about the legislative history you just referred to. Yes, I'm finding that. It's in our brief, and it is in a footnote. It's footnote 19 in our opening brief, pages 26 to 27. The Qualified Stock Option exclusion was enacted, again, specifically in response to what was perceived as erroneous treatment by the Internal Revenue Service for so-called incentive stock options, a tax-favored flavor of stock option that is separate from the ones at issue here, and so the point was the QSO exclusion shouldn't be read to affect the meaning of money remuneration from decades before. It really was a... Okay, thank you, Mr. Rowe. All right, thank you very much. Ms. Del Sol. Good morning. Please, the Court. I'd like to just clarify at the outset that this issue has already been decided by the Fifth Circuit, so to reach the result, the railroad urges here would create a split in the circuit, and we would urge the Court to follow the BNSF's analysis, which we think is correct. You're touring the country defending... Apparently, it would appear so, Your Honor. Just to address Judge Mannion's question about when the tax arises, just to clarify that, in the case of these non-qualified stock options, employees aren't taxed until they exercise the option. So they get an option that's a right to purchase stock at some set price, and then there's some later exercise date where they can exercise the stock, which means they get basically a benefit of the bargain. They get to exercise the option by purchasing the price for less than the current value. But they hope the value went way up, and so they can exercise it way back. You wouldn't exercise it otherwise, but... But they pay on... On the difference. On the difference. Right, and at that point, you can sell the stock immediately, and so you can have a situation where you would sell the stock and have your tax arise at the same day. In fact, that was one of the options the employees had here, that they could simply tell the transfer agent they wanted to exercise their option and take the cash, and then the transfer agent would take the tax withholding out to cover the tax and give the employees the cash, and they'd never even see the stock. Okay, but you say when they sell the stock, they pay tax... That's when the tax is due, and that's when the company would withhold the tax. But they pay on the whole value of that, or... On the value of the spread, the difference between... Okay, so there's a base that they do have to have received, and you're saying that's when you... That's what the issue is here. It's not the appreciation. Yeah, they're basically paying... It's the basis, whatever you want to call it, that they got value for initially, I guess you're saying. Well, basically, they got from the company the right to purchase the price at an increased price, and they basically pay what the fair market value... The difference between the fair market value and what they pay is what they pay tax on. Okay, well, normally in an option, when you have an option to do strike price in the future, as it gets closer to the strike price, it could be the value of that option increases. The options values, I think... Yeah, no, that's where I'm... But I'm just trying to clarify here. I'm confused about that. Section 83 of the code actually lays this out and sets out what the tax is on, and Section 83A actually lays that out, so you can look at exactly what the tax would be on. But basically, what's happening is that they're getting something that they can exercise and convert to cash, and there is no tax imposed on the employee in the case of the type of non-qualified stock options that we're dealing with here until they exercise the option. And that does differ from qualified stock options, which Congress exempted from income tax, so there's no tax on that spread. They just pay capital gains when they ultimately sell the stock. Okay, that's the difference. And that's what maybe is confusing, Your Honor. I just want to make sure I've got it right. It's when they receive this option. If it were under FICA, are there identical transactions under FICA? Yes, if it were a non-railroad employee, you would have the same transaction under FICA. Okay, and so there's a precedent for that to show exactly they get taxed? There's been no dispute in these cases that that would be taxed. FICA taxes all remuneration for employment, and not the option itself. I mean, if the option's never exercised, the types of options that we're dealing with here aren't under Section 83, taxed when you get the option, they're taxed when you exercise it. And when you have a vested right in the stock that's not subject to a substantial risk of forfeiture. So basically, if the employees get some non-vested right in the stock or an option that they may never exercise, that's not what's taxed. It's taxed under Section 83 when it's exercised in the case of the non-qualified stock options. But that's the same for income tax purposes and for FICA purposes, and we're just urging the court to reach the same result for railroad retirement taxes, which are the type of employment taxes parallel to FICA that apply to railroad employees. And as I mentioned, the Fifth Circuit and BNSF had held that this money remuneration can't be viewed as narrowing language, but that it certainly doesn't clearly limit what's taxable to cash, as the railroads urge. But rather, it held that that language is susceptible to broader meaning. And in fact, the Union Pacific District Court concluded that the statutory language unambiguously would breach stock options. And I think when you look at the phrase overall, any form of money remuneration, it certainly contemplates things other than cash. First of all, every tort to look at it has said that any form of connotes breadth. And then when you look at definitions of money, both in case law and in dictionaries, as we cited in our brief, it's apparent that money can mean not only cash or coins, but assets readily convertible to cash or wealth. How about anything you can sell on eBay? Well, anything that has a market value... Christmas turkeys. Well, I think things that are commodities under the corresponding Railroad Retirement Benefit... or under the benefit statute under the Railroad Retirement Act, their regulation, which is Treasury regulation... or sorry, it's 20 CFR... not Treasury regulation, but 20 CFR, section 211.2a, it interprets the benefit statute and views money... for benefits purposes of compensation as any form of money remuneration as including not only money, but services, commodities, or privileges that are given as remuneration for employment. So I think that would include any commodity. And certainly the statute contemplates... So that seems to lose track of at least the word money. Yes, and I think if you look at the statute... And let me, if I could... We do have a difference in statutory language. And I know that the government wants to basically try to make FICA and the RRTA as congruent as possible. That seems to be the... That certainly seems to be the way Congress has been moving and certainly the view that the Treasury regulation takes. Without changing this language, however. And so, I guess, can you point us to any differences that the government recognizes in the meanings of similar but distinct terms between those two statutes? Well, I think if... There is a difference in the general definition. But in the Railroad Retirement Tax Act statute, when you look at the statute as a whole, there are exclusions for non-cash benefits, which indicate that that's not a limited issue to money. But there are other differences in the specific exclusions. I mean, there are some things that are specifically excluded under FICA that are not specifically excluded in the enumerated exclusions, and vice versa. So where do we go with the Christmas turkeys or the NFL tickets that can be sold on eBay? Well, I think that probably... You know, I'm not sure that there's any exception to those. I think those are employee fringe benefits of a non-cash... They are. Are they money remuneration? Well, I think there's a specific exclusion in E-5 of Section 3231. But you went too far in suggesting that anything that has market value is a money equivalent. Well, I would... You'd have an employee maybe gets a birthday cake on his birthday. Well, there may be some de minimis fringe benefits that there are exceptions for. It's worth $10. Then your market value theory is he has to pay tax on that. It's a wasting asset, however. That is true, Your Honor. It is a wasting asset. But I think if you look at... In footnotes 6 and 7 in our brief, we talked through some of the non-cash exclusions, particularly those under 3231E9 and E-5, which are examples of non-cash exclusions. And the statute actually carves out these specific types of exclusions for non-cash employee fringe benefits. Things like non-cash meals, which I guess is close to a cake. And things like non-cash employee achievement awards. And one of the regulations they're under actually includes the example of a gift card, which would be a non-cash item. And those sorts of things, because they're carved out of the statute as accepted, leads to the indication that things that are specifically accepted would be included. And the Supreme Court in Quality Stores applied this exact same analysis in determining whether severance payments were subject to FICA wages under Section 3231A. That rationale, I realize it's the Supreme Court, but sometimes Congress does use belts and suspenders at the same time. Well, I think this is dealing with a parallel statute Let me ask you about the parallelism a little bit. You cited a committee report from back in the 1930s where the I guess the lawyer for the Railroad Executives Association described the bill for the RTA as something he had written. Have you tracked the path through Congress that the two bills, FICA or the Social Security Act and the Railroad Act, they were going through at the same time, right? Well, actually what happened, Your Honor, is that the Railroad Congress sort of came up with we need to do something around the same time. And the Railroads had some existing pension plans. Were they different committees? I'm not sure what the committee division was, but I know that the Railroad Retirement Statute was started first because it was viewed as an exigency to make sure that railroad workers were taken care of, that the industry was particularly important to national commerce, and that there were these pension plans that were falling apart and forcing older workers who should have, who were not opening up jobs for younger workers to not retire because they didn't have their pensions. How long was that in place before 1935? The first statute For the railroad. I'm sorry, how long were those sorts of pensions in place? I think some of them dated back to the 1880s, but they were very variable in form. They weren't the sort of contributory plans that this was. Some were funded by the employees, some were funded exclusively by the railroads, and they varied tremendously. And they were all failing plans, which is why Congress needed to step in. And so because Social Security wasn't projected to be in place until the late 30s, they moved forward with a separate railroad retirement system. But the idea was basically the same remedial purpose. The railroad retirement system that they initially promulgated was struck down twice by the court. And this money remuneration language arose in the second iteration of the statute in the 1935 version, and it included an exception for free transportation, even though this money remuneration language came in, which certainly suggests that Congress didn't mean just money or just cash in that context because even in that first iteration, they had a carve-out for something that was non-cash remuneration. And I would just emphasize That carve-out was for what? For free transportation. For free transportation. Which was one of the benefits generally offered to railroad employees at that point. Sure. I see my red light is on. If there are further questions, I'd be happy to answer the court's questions. If not, I'd just like to rest my brief and ask that this court follow the Fifth Circuit and the other lower courts that have reached the same conclusion and all held that these are subject to a railroad retirement tax. Okay. Thank you, Ms. Del Sol. So, Mr. Riley, we'll give you another minute if you'd like. Thank you, Your Honor. First, the issue is far from settled. We know there's an appeal pending in the Eighth Circuit, and there was a recent district court decision from Florida, so it's pretty clear it's going to go to the Eleventh Circuit. So this issue is still in flux. So we would encourage the court to make your own decision on the issues in play and not simply defer to the Fifth Circuit in this case. In answer to your question, Judge Hamilton, these did go on actually parallel somewhat separate tracks. The railroad retirement legislation was mostly in the Commerce Committee, and the FICA and Social Security legislation was mostly in Ways and Means and Finance. This actually touches on the point raised in the AAR brief. In many ways, railroad retirement is railroad legislation, whereas FICA and Social Security were tax and benefit legislation. And, Your Honor, the only other point I'd like to make is simply that the fact that any property can be valued in terms of any other property, anything has a dollar value. With respect, that doesn't answer the question in this case. So it's not, you know, shares of stock are not money. They can be valued in money. You can buy them for money. You can sell them for money, but they're not money. And we believe that's the core of the case, statutory distinction that should be enforced. Thank you very much. Thank you. Okay. Thank you very much to both counsel.